STATE OF CONNECTICUT, Plaintiff,

v.

LONG ISLAND LIGHTING COMPANY, Robert Flacke, as commissioner of the Department of Environmental Conservation of the State of New York, and Anne Gorsuch, as administrator of the United States Environmental Protection Agency, Defendants.

No. CV 81–1136.

United States District Court,
E. D. New York.

March 24, 1982.

Carl R. Ajello, Atty. Gen. of State of Conn. by Kenneth N. Tedford, Asst. Atty. Gen. for Environmental Protection, Hartford, Conn., for plaintiff.

Diane Donley, Land and Natural Resources Div., U. S. Dept. of Justice, Maryann Muirhead, U. S. Environmental Protection Agency, Washington, D. C., Robert Abrams, Atty. Gen. of State of N. Y. by Mary L. Lyndon, Asst. Atty. Gen., New York City, for defendant Flacke.

Edward M. Barrett, Mineola, N. Y., Maida Oringher Lerner, Washington, D. C., for defendant Long Island Lighting Co.

Daniel Millstone, Litigation Director, New Haven, Conn., for intervenors Conn. Fund for the Environment et al.

## MEMORANDUM AND ORDER

GEORGE C. PRATT, District Judge:

In 1972, pursuant to § 110 of the Clean Air Act, 42 U.S.C. § 7410, New York State submitted an implementation plan for air quality to the United States Environmental Protection Agency (EPA). This state implementation plan (SIP), which was approved by the EPA, prohibits the sale, purchase or use of fuel containing more than 1% sulphur in power generating plants in Suffolk County, New York. On August 23, 1977, the EPA approved a revision to the SIP, permitting the defendant Long Island Lighting Company (Lilco) to burn fuel oil with a maximum sulphur content of 2.8% at its Northport and Port Jefferson generating facilities. This revision, technically a "special limitation": but also called a "variance", remained effective until May 31, 1980. 40 CFR 52.1670(33).

Before that expiration date, Lilco sought and received from the New York State Department of Environmental Conservation (DEC) an extension of its variance authorizing continued use of the 2.8% sulphur content fuel oil. However, the EPA, which must review and approve all such SIP revisions, 42 U.S.C. § 7410, did not approve and promulgate the revision until September 24, 1981. 46 FR 47069 (Sept. 24, 1981). Effective that date, the EPA approval extended

Lilco's variance to burn the higher sulphur content fuel oil until September 24, 1984. However, during the 16 month period from June 1, 1980, when EPA approval of the old variance expired, until September 24, 1981, the effective date of the new variance, Lilco continued to burn 2.8% fuel, rather than the 1% fuel required by the underlying SIP.

In April, 1981, the State of Connecticut filed this action pursuant to 42 U.S.C. § 7604 naming Lilco, the acting administrator of EPA, and the commissioner of DEC as defendants. The complaint alleged that Lilco had failed to comply with the New York SIP, which limited the use of fuel oil to 1% sulphur content, that the commissioner of DEC had taken no action against Lilco, and that the acting administrator of EPA had failed to investigate and make findings pursuant to his non-discretionary duty under 42 U.S.C. § 7413(a)(1). Connecticut demanded that the court enjoin Lilco's use of greater than 1% sulphur content fuel oil at its Port Jefferson and Northport generating facilities, and order EPA and DEC to enforce the New York SIP.

The parties stipulated to extend defendants' time to answer, and after answering the complaint, defendants moved to stay all proceedings pending EPA's decision on the proposed variance to the SIP, which was at that time under review by EPA. The plaintiff opposed the stay, and, after considering the papers and hearing oral argument, the court denied defendants' motion. On August 20, 1981, Connecticut filed a motion for summary judgment, requesting that the court grant injunctive relief enforcing the 1% sulphur content fuel oil limitation.

Plaintiff's motion was returnable on September 16, 1981. Defendant Lilco requested an adjournment because counsel for EPA assured Lilco and the court that a final rule would be enacted approving Lilco's burning of 2.8% sulphur fuel before the end of September, 1981. Since EPA approval of the variance for 2.8% content fuel oil would render Connecticut's motion for summary judgment moot, the court granted Lilco's request and adjourned the motion until October 7, 1981.

After the court granted the adjournment, but before EPA's approval of the variance the Connecticut Fund for the Environment, Inc. (CFE), John Walton, Norman Pratt, Dorothy Noyes Kane, and Charlotte Kitowski moved to intervene as plaintiffs in this action. Their proposed complaint alleged that as citizens of Connecticut they were all injured by Lilco's burning of the 2.8% fuel, and requested both the injunctive relief sought by the State of Connecticut and damages for their injuries under a theory that Lilco's actions constituted a common law nuisance.

After EPA approved Lilco's use of the 2.8% fuel, all defendants moved to dismiss Connecticut's complaint as moot, and filed briefs in opposition to the motion to intervene. Connecticut and the intervenors filed memoranda opposing the motions to dismiss, arguing that the complaint was not moot in that they were requesting relief for the period of time between the variances when Lilco's use of 2.8% fuel violated the New York SIP.

Before the court at this time, in the order in which they were filed, are (1) Connecticut's motion for summary judgment, (2) the intervenor-plaintiffs' motion to intervene, and (3) defendants' motion to dismiss. All parties, including the proposed intervenors, have submitted numerous memoranda on these motions, and appeared before the court for oral argument on November 4, 1981. Although the court recognizes that the issues which are dispositive of each motion are interrelated, the court will discuss each motion separately.

*Plaintiff's Motion for Summary Judgment.*

■ The State of Connecticut filed this suit pursuant to 42 U.S.C. § 7604, the "Citizen Suit" provision, which gives the district court jurisdiction to enforce an emission standard or limitation or to order the administrator of the EPA to perform a non-discretionary act or duty that is in question. The statute provides that

(a) * * * any person may commence a civil action on his own behalf—

(1) against any person * * * who is alleged to be in violation of (A) any emission standard or limitation under this chapter or (B) an order issued by the Administrator or a State with respect to such a standard or limitation,

(2) against the Administrator where there is alleged a failure of the Administrator to perform any act or duty under this chapter which is not discretionary with the Administrator.

When Connecticut filed suit in April, 1981, Lilco was in violation of the underlying New York SIP, which required 1% fuel. Therefore, at that time this court had jurisdiction over Connecticut's suit for enforcement pursuant to § 7604. However, since EPA has now approved another variance for 2.8% fuel, Lilco once again complies with the New York SIP, so that there is now no limitation for this court to enforce. Therefore, Connecticut's motion for summary judgment seeking enforcement of the 1% sulphur content limitation is denied as moot.

*The Motion to Intervene.*

■ The intervenor-plaintiffs argue that they have a right to intervene pursuant to FRCP 24(a)(1) or (2), and, alternatively, that they should be permitted to intervene pursuant to FRCP 24(b)(2). In opposition, defendants argue that (1) there is no intervention of right under FRCP 24(a) because no statute confers an unconditional right to intervene, and (2) since the subject matter of the action is moot, the intervenors present no claim with a question of law or fact in common with Connecticut's claim. In addition, defendants argue that even if there are any issues remaining over which this court has jurisdiction (and they argue vigorously that there are none), the intervenors' interests are adequately represented by plaintiff, the State of Connecticut.

Rule 24(b) of the Federal Rules of Civil Procedure provides that "anyone may be permitted to intervene in an action: * * * (2) when an applicant's claim or defense and the main action have a question of law or fact in common." Despite defendants' arguments that all the issues in this case have been resolved by EPA's final approval of the 2.8% variance, the court recognizes that the intervenors do present claims with questions of law and fact in common with those of plaintiff. In addition, these claims were not advanced by Connecticut until the intervenors appeared on the scene, a fact which tends to weaken defendants' argument that plaintiff adequately represents the intervenors' interests.

Rule 24(b) requires the court to consider "whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." Since the original plaintiff, Connecticut, has joined in the intervenors' request that this court fashion a remedy as compensation for injury suffered during Lilco's period of noncompliance with the New York SIP, the court can consider the claims of Connecticut and the intervenors as identical, and, therefore, no delay will result.

The motion of the CFE and the individual intervenors to intervene in this lawsuit as plaintiffs is, therefore, granted. Since the court has determined that it will permit this intervention under Rule 24(b), the court will not reach the issue of whether, as plaintiffs argue, this is a case where a statute, 42 U.S.C. § 7604(b)(1)(B), confers an unconditional right to intervene.

*Defendants' Motion to Dismiss.*

■ The court now turns to the key issue in this case: whether plaintiffs can obtain relief for the alleged injuries caused during Lilco's period of noncompliance with the New York SIP, for the 16 months between the expiration of the first EPA variance and the effective date of the second variance. For relief, plaintiffs seek damages, or an order requiring Lilco to burn 1% fuel for a 16 month period equal to Lilco's period of noncompliance, or both.

Defendants move for summary judgment dismissing the complaint on the ground that this court has no jurisdiction since EPA has now granted final approval to the 2.8% variance, and that any action contesting that approval may be brought only in the United States Court of Appeals for the Second

Circuit. For this argument, defendants cite numerous cases holding that the court of appeals is the appropriate forum in which to bring an action for review of an EPA determination. *See, e.g., Harrison v. PPG Industries, Inc.*, 446 U.S. 578, 100 S.Ct. 1889, 64 L.Ed.2d 525 (1980); *New England Legal Foundation v. Costle*, 666 F.2d 30 (CA2, 1981); *State of Connecticut et al. v. United States Environmental Protection Agency et al.*, 656 F.2d 902 (CA2, 1981). Each of these cases held that the court of appeals was the appropriate forum for review of an EPA final action.

The issue before this court, however, is not whether the EPA was correct in its approval of the new 2.8% variance. Rather, it is whether this court can award damages to the plaintiffs for the alleged injuries suffered during Lilco's period of noncompliance between the two variances, or alternatively fashion the equitable remedy suggested by the plaintiffs. Defendants argue that (1) there is no statutory authority for either monetary or equitable relief, and (2) that plaintiffs cannot maintain their claim under a common law nuisance theory.

With respect to defendants' first argument, the court agrees that the Clean Air Act does not on its face authorize a court to award such relief. An examination of the statute indicates that it provides a fairly comprehensive scheme for controlling pollution. After the administrator of EPA promulgates air quality standards pursuant to 42 U.S.C. § 7409, each state is required to adopt and submit to EPA a state plan for implementation, maintenance and enforcement of those standards. 42 U.S.C. § 7410. The act provides that, where there is noncompliance, the administrator shall notify both the violator and the state where the violation occurs, and, if the violation is not corrected, the administrator may issue an order requiring compliance or may bring a civil action to enforce compliance. 42

U.S.C. § 7413. There is also provision for the administrator's promulgation of noncompliance penalties, 42 U.S.C. § 7420, which, simply stated, may equal the amount that noncompliance has saved the violator. 42 U.S.C. § 7420(d). Municipal plaintiffs, pursuant to 42 U.S.C. § 7426(b), may petition for EPA review of the interstate effect of a major source's emissions which may be contributing to air pollution. As discussed above, the citizen suit provision, 42 U.S.C. § 7604, permits any person to bring a civil action in district court against the violator, the administrator, or the state or federal governments, to enforce the state standards. In addition, 42 U.S.C. § 7607 provides that any final action by the administrator is reviewable in the United States Court of Appeals for the appropriate circuit. Nowhere is there provision made for an award of damages to a citizen who brings a suit under § 7604.[1]

The remaining issue is whether plaintiffs can obtain the relief they seek under a theory of common law nuisance. To support their argument that plaintiffs cannot maintain such an action, defendants place great weight on the Second Circuit's recent decision in *New England Legal Foundation, et al. v. Costle*, 666 F.2d 30 (CA2, 1981). There the circuit court found that the plaintiffs could not state a common law nuisance action against defendant Lilco for burning 2.8% sulphur content fuel oil under the first variance that EPA granted to Lilco for such use. The Second Circuit affirmed the district court, *New England Legal Foundation v. Costle*, 475 F.Supp. 425 (D.Conn.1979), which had refused to grant an equitable nuisance remedy because the conduct complained of had been specifically approved by EPA.

In affirming, the court noted that in *City of Milwaukee v. Illinois*, 101 S.Ct. 1784 (1981), the Supreme Court had held that congress had precluded the fashioning of

---

1. The plaintiffs have not argued that there is an implied private right of action under the Clean Air Act. The existence of such a right of action is in doubt in light of the Supreme Court's decision in *Middlesex County Sewerage Authority v. National Sea Clammers Association*,

453 U.S. 1, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981). However, since the court has determined that, even if there were an implied private right of action, plaintiffs in this case are not entitled to relief, it is not necessary to address this issue.

common law remedies with respect to effluent discharge by imposing a complex regulatory system to govern the discharge of polluting materials in the nation's waterways. While the circuit court declined to reach the question of whether the Clean Air Act preempts federal common law nuisance actions with respect to air pollution, *New England Legal Foundation, supra,* at 33, it adhered to the spirit of *City of Milwaukee* by finding that it would be "both counterproductive and beyond the proper scope of the judicial function" for a court to fashion an equitable remedy for alleged injuries caused by EPA-approved conduct. In addition, the circuit court pointed out, as had the district court, that the plaintiffs did have an adequate remedy at law. They could address their claims against EPA's final decision to the court of appeals on direct appeal pursuant to 42 U.S.C. § 7607, and, alternatively, pursuant to 42 U.S.C. § 7426, municipal plaintiffs could petition the EPA for review of the interstate effects of the 2.8% variance. Thus, the circuit court found that congress, by enacting the detailed legal remedies for review of an EPA variance, had precluded the equitable relief sought by the plaintiffs in that case. *New England Legal Foundation, supra,* at 33.

Is such relief also precluded on the facts of this case which focus on the 16 months between two variances approved by EPA? The court recognizes that the factual situation in this case differs from *New England Legal Foundation,* where the plaintiffs protested the first variance. Here when the first variance expired on May 31, 1980, Lilco began the period of noncompliance which is the subject of this litigation. Therefore, Lilco does not now stand in the position of operating within the four corners of an EPA-approved New York SIP as it did in *New England Legal Foundation.*

However, the court is constrained to conclude that the legal remedies found in the Clean Air Act for review of an EPA variance preclude the equitable relief plaintiffs seek in this case. As Judge Newman pointed out in his district court opinion in *New England Legal Foundation, supra,* the pur-

pose of seeking equitable relief against Lilco is to "vitiate the effect of the special limitation", *id.* at 442 n.21, and plaintiffs can obtain such relief either through direct appeal to the court of appeals pursuant to 42 U.S.C. § 7607 for review of EPA's final approval, or through a petition to EPA pursuant to § 7426. Such remedies are, in the Second Circuit's words, "more appropriate". *New England Legal Foundation, supra,* at 33.

If Lilco were in flagrant, willful violation of an emission standard or limitation, a different result probably would be warranted. However, the court must recognize that 2.8% fuel had been approved for use since 1977 by both DEC and EPA. 42 FR 43078 (Aug. 26, 1977). That first 2.8% variance had been approved by EPA after a review period during which EPA invited public comment and after a hearing where EPA determined that the variance would neither violate New York's ambient air quality standards nor contribute significantly to pollution in the northeast region.

Lilco was not dilatory or negligent in its efforts to obtain a renewal of EPA approval of the 2.8% variance. In the summer of 1979, Lilco applied to DEC for a three-year extension. However, obtaining DEC approval at the state level took more than eight months, and only then could the variance application be submitted to EPA for approval. On July 31, 1980, EPA proposed to approve the variance. 45 FR 50833. However, such are the wonders of the federal bureaucracy that it took 14 months for EPA to finally grant its approval and make the state-approved extension of the variance official. According to defendants, part of that delay was caused by EPA's consideration, at Connecticut's behest, of the impact of the variance on Connecticut's air quality standards. At the end of the rule-making period, EPA in its final approval again determined, this time based on an additional four years' experience, that the variance would neither violate New York's air quality standards nor significantly contribute to pollution levels in Connecticut. 46 FR 47069 (Sept. 24, 1981).

Although the court is surprised and somewhat discouraged at the amount of time it took EPA to renew a variance it had originally investigated and approved only three years earlier, the fact remains that, while Lilco may technically have been in violation of the New York SIP due to bureaucratic foot-dragging in processing the requested extension of the variance, it was doing so with the knowledge that the variance had already been approved by the New York DEC and almost certainly would be approved by the EPA.

In addition, the court notes that neither Connecticut nor the intervenors exercised their right to seek immediate enforcement of the 1% fuel limitation. A citizen suit for enforcement of the New York SIP could have been brought in this court at any time after May 31, 1980, when Lilco's special limitation expired. However, Connecticut waited ten and a half months, until April 15, 1981, before commencing this suit, and the intervenor-plaintiffs did not seek to join in until August, 1981, when the EPA's processing of the second variance was virtually complete.

While the court does not condone Lilco's acting in violation of the letter of the New York SIP, it would be presumptuous of this court to grant plaintiffs the equitable relief they seek when the EPA after careful consideration in two separate rule-making procedures has determined that burning 2.8% sulphur content fuel oil does not endanger Connecticut's air quality.

As noted in *New England Legal Foundation*, plaintiffs have several remedies under the Clean Air Act. They may petition for review of the interstate effects of the sulphate emission pursuant to 42 U.S.C. § 7426, which the State of Connecticut has already done, and they may directly seek review of the EPA's final approval of the special limitation by the Court of Appeals pursuant to 42 U.S.C. § 7607. (At oral argument, the parties indicated that Connecticut has also filed for such review.) If successful, that attack on the variance in the Court of Appeals would grant plaintiffs the same relief they seek here.

For the reasons stated, the motion to intervene by the Connecticut Fund for the Environment and the individual intervenors is granted; Connecticut's motion for summary judgment is denied; and defendants' motion for summary judgment dismissing the complaint is granted.

SO ORDERED.